UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re SANOFI-AVENTIS SECURITIES LITIGATION | : : : : : : : : : | Civil Action No. 1:07-cv-10279-GBD <br><br> <u>CLASS ACTION</u> |
| This Document Relates To:<br><br>    ALL ACTIONS. | | |

DECLARATION OF TRIG R. SMITH IN SUPPORT OF LEAD PLAINTIFF NEW ENGLAND CARPENTERS GUARANTEED ANNUITY FUND AND HAWAII ANNUITY TRUST FOR OPERATING ENGINEERS' RENEWED MOTION FOR CLASS CERTIFICATION

679104_1

I, TRIG R. SMITH, declare as follows:

1. I am an attorney duly licensed to practice before courts in the States of California and Colorado, and am admitted *pro hac vice* to practice in this action. I am a member of the law firm of Robbins Geller Rudman & Dowd LLP, lead counsel of record for plaintiffs in the above-entitled action. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. Attached to this declaration are true and correct copies of the following documents:

(a) Exhibit A: Erik R. Sirri, Director, Division of Market Regulation, United States Securities and Exchange Commission, Keynote Remarks Made at the Inaugural Edward Lane-Reticker Speaker Series Sponsored by the Morin Center for Banking and Financial Law: Trading Foreign Shares (Mar. 1, 2007);

(b) Exhibit B: Daily trading information for Sanofi's ADRs during the Class Period obtained from http://finance.yahoo.com;

(c) Exhibit C: Sanofi ADRs outstanding at month's end (in millions) obtained from Bloomberg Financial L.P.;

(d) Exhibit D: Daily trading information for Sanofi's common stock during the Class Period obtained from http://finance.yahoo.com;

(e) Exhibit E: Excerpts of Sanofi's 2006 Form 20-F (filed with the SEC on April 3, 2007);

(f) Exhibit F: Compendium of records produced by the DTCC in this action pursuant to subpoena *duces tecum* (filed under seal);

(g) Exhibit G: Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Admission;

(h) Exhibit H: Spreadsheet of institutional investors' holdings of Sanofi's ADRs during the Class Period (source: Thomson Reuters Corp.);

(i) Exhibit I: Spreadsheet of institutional investors' holdings of Sanofi's common stock during the Class Period (source: Thomson Reuters Corp.);

(j) Exhibit J: Excerpts of Sanofi's Form F-3ASR (filed with the SEC on March 15, 2010);

(k) Exhibit K: Daily closing prices for the S&P 500 Index during the Class Period obtained from Bloomberg Finance L.P.;

(l) Exhibit L: Daily closing prices for the NYSE ARCA Pharmaceutical Index during the Class Period obtained from http://finance.yahoo.com;

(m) Exhibit M: Daily closing prices for the Euronext 100 during the Class Period obtained from Bloomberg Finance L.P.;

(n) Exhibit N: Daily closing prices for the BE500 Pharmaceutical Index during the Class Period obtained from Bloomberg Finance L.P.; and

(o) Exhibit O: The firm résumé of Robbins Geller Rudman & Dowd LLP.

3. **Weekly Trading Volume**: As reported at http:\\www.finance.yahoo.com, the trading volume from February 20, 2006 through June 13, 2007 (the "Class Period") for Sanofi-Aventis, SA ("Sanofi" or the "Company") American Depository Receipts ("ADRs") was 474.8 million shares, which is over 1.9 times the 241.4 million ADRs available for trading. *See* Exs. B, C. The average

679104_1

weekly trading volume was 6.9 million shares and the average weekly trading volume as a percentage of the ADRs available for trading was 2.8% over the Class Period.[1]

4.    As reported at http:\\www.finance.yahoo.com, the trading volume during the Class Period for Sanofi's common shares was 1.6 billion shares, which is 1.2 times the 1.3 billion shares available for trading.  *See* Exs. D, E at 1.  The average weekly trading volume as a percentage of common shares available was 1.8% over the Class Period.

5.    Records produced by DTCC during discovery show that transfer of ownership of Sanofi's common stock occurred on DTCC facilities here in the United States during the Class Period.  *See, e.g.*, Ex. F.  The dollar price at which these shares transferred ownership in the United States during the Class Period at the DTCC and other domestic clearing agencies was based on the price of Sanofi's common stock on the Euronext (adjusted for the prevailing United States dollar to Euro exchange rate).

6.    With regard to the pricing mechanism of Sanofi's ADRs and common shares, defendants have admitted that the NYSE and Euronext were efficient markets.  *See* Ex. G.

7.    **Analyst Coverage**:  Based on a review of publicly available reports and the list of participants on Sanofi's analyst and investors conference calls, at least 30 different analysts and/or brokerage firms followed Sanofi during the Class Period.  More than 350 analyst reports regarding Sanofi were issued during the Class Period by numerous firms, including: ABN AMRO Securities Ltd., Bear Stearns & Co., Inc., CA Cheuvreux, Credit Suisse First Boston LLC, DZ Bank AG, BNP Paribas, HSBC Bank, ING Financial Markets, JP Morgan Securities, Inc., Lehman Brothers Inc.,

---

[1]    The weekly volume during the Class Period is calculated as the sum of the daily volume during the week beginning on Monday and ending on Friday.  The total trading volume is calculated by adding each day's volume during the Class Period.

Oppenheimer Research, Prudential Equity Group, LLC, Santander Investment Securities Inc., UBS Limited, and WestLB Equity Markets.

8. **Market Makers/Specialist**: Since Sanofi's ADRs traded on the New York Stock Exchange ("NYSE"), there were no market makers as there are for securities traded on the Nasdaq or over-the-counter markets. Instead, the NYSE uses specialists to provide liquidity and price stability, which are the functional equivalent of market makers. *See* http:\\www.investopedia.com/ask/answers/128.asp. Unlike Nasdaq where there can be multiple market makers, firms listed on the NYSE are assigned a single specialist. *Id*. at http:\\www.investopedia.com/university/electronictrading/trading2.asp.

9. **Institutional Holdings**: During the Class Period, over 900 institutional investors reported holding Sanofi common stock. *See* Ex. H. Further, over 500 institutions reported holding Sanofi's ADRs during the Class Period. *See* Ex. I.

10. **Form F-3 Eligibility**: SEC Form F-3 is the functional equivalent to Form S-3, except Form F-3 is reserved for foreign private issuers who provide "a steady stream of corporate disclosure that is broadly digested and disseminated to the marketplace." 72 Fed. Reg. 35125 (June 26, 2007). Among the requirements for filing a Form F-3 are that a company: (a) be organized outside the United States and its territories; (b) has a class of securities registered pursuant to Section 12(b) of the Exchange Act; (c) has filed at least one annual report on Form 20-F or 10-K; (d) has filed all reports necessary pursuant to Sections 13, 14, or 15(d) of the Exchange Act for twelve calendar months; (e) has suffered no default of its obligations; and (f) has an aggregate market value of

common equity held by non-affiliates of $75 million or more.  *See* SEC Form 1983, "Form F-3 Registration Statement Under the Securities Act of 1933, General Instructions."[2]

11.     The market value of Sanofi during the Class Period exceeded $50 billion.  Sanofi was organized and operated under French law during the Class Period.  Sanofi regularly filed periodic reports with the SEC, as well as annual reports, prior to and throughout the Class Period.  Consistent with its qualification to file an F-3, Sanofi filed a Form F-3ASR (automatic shelf registration statement of a well-known seasoned issuer) on March 15, 2010.  *See* Ex. J.

12.     **The Price of Sanofi's Securities Were Impacted By New Information**:  During the relevant period, the price of Sanofi's ADRs and common stock reacted to Company-related disclosures in a manner demonstrating market efficiency.  For instance, on June 13, 2007, the day the FDA's Advisory Committee held the public hearing during which the committee unanimously rejected approval and disclosed the association between rimonabant and suicidal behavior (*see* ¶¶79-92), Sanofi's ADR price decreased 4.16%, while the S&P 500 and NYSE ARCA Pharmaceutical Indexes increased 1.52% and 0.61%.  *See* Exs. B at 1, K at 1, L at 1.  On June 14, 2007, Sanofi's ADR price decreased another 4.04%, while the S&P 500 Index increased 0.48% and the NYSE Pharmaceutical Index decreased only 0.42%.  *See id.*  During the Class Period, Sanofi's ADRs had a daily average trading volume of 1.48 million shares, but on June 13 and June 14, 2007, ADR trading volume increased to 12.19 and 8.88 million shares, respectively.  *See* Ex. B at 1.[3]

---

[2]     *Compare* SEC Form 1379, "Form S-3 Registration Statement Under the Securities Act of 1933, General Instructions."

[3]     The daily average trading volume of Sanofi's ADRs was calculated by adding the daily trading volume in Exhibit B for the Class Period and dividing by the total number of trading days during the Class Period.

13. The price of Sanofi's common stock also decreased after the June 2007 disclosures. On June 14, 2007, the trading day immediately following the FDA Advisory Committee's public hearing concerning rimonabant, Sanofi's common stock price decreased 6.33%, while the Euronext 100 and the Bloomberg Europe 500 Pharmaceutical Indexes increased 1.77% and 0.11%. *See* Exs. D at 1, M at 1, N at 1. During the Class Period, Sanofi's common stock had a daily average trading volume of 4.69 million shares on the Euronext, but on June 14, 2007, the trading volume increased to 33.83 million shares. *See* Ex. D at 1.[4]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 1st day of February, 2012, at San Diego, California.



s/ TRIG R. SMITH
TRIG R. SMITH

---

[4] The daily average trading volume of Sanofi's common shares was calculated by adding the daily trading volume in Exhibit D for the Class Period and dividing by the total number of trading days during the Class Period.

CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 1, 2012.

s/ TRIG R. SMITH
TRIG R. SMITH

ROBBINS GELLER RUDMAN
       & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  trigs@rgrdlaw.com

679104_1

# Mailing Information for a Case 1:07-cv-10279-GBD-FM

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Lewis J. Liman**
  lliman@cgsh.com,maofiling@cgsh.com,mvogele@cgsh.com,lpeacock@cgsh.com,gmokodean@cgsh.com,cfagg@cgsh.com,skaiser@cgsh.com

- **L. Dana Martindale**
  dmartindale@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Evan J. Smith**
  esmith@brodsky-smith.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,stremblay@rgrdlaw.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`