UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re SANOFI-AVENTIS SECURITIES LITIGATION | x<br>:<br>:<br>:<br>: | Civil Action No. 1:07-cv-10279-GBD<br><br>CLASS ACTION |
| This Document Relates To: | :<br>: | ECF CASE |
| ALL ACTIONS. | :<br>:<br>x |  |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ....................................................................................................1

II.     PROCEDURAL HISTORY AND SUMMARY OF ALLEGATIONS ..............................4

III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................7

        A.      The Standards for Reviewing a Proposed Settlement for Preliminary
                Approval ...................................................................................................7

        B.      Preliminary Approval of the Settlement Should Be Granted..................9

                1.      The Complexity, Expense, and Likely Duration of the Litigation
                        Supports Approval of the Settlement........................................9

                2.      The Reaction of the Class to the Settlement ..............................10

                3.      The Stage of the Proceedings and the Amount of Discovery
                        Completed.................................................................................10

                4.      The Settlement Was Negotiated at Arm's-Length and Is Supported
                        by Plaintiff and Experienced Counsel........................................12

                5.      The Risk of Establishing Liability and Damages ......................13

                6.      The Risks of Maintaining the Class Action Through Trial........14

                7.      Ability to Withstand a Greater Judgment ..................................15

                8.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation........................15

IV.     THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE
        FORM OF THE PROOF OF CLAIM AND RELEASE ARE APPROPRIATE
        AND SHOULD BE APPROVED ...................................................................16

        A.      The Scope of the Notice Program Is Adequate.....................................16

        B.      The Proposed Form of Notice Comports with the Requirements of Due
                Process, the PSLRA, and Rule 23 and Is the Same or Similar to the
                Form(s) of Notice Routinely Approved by Courts in This Jurisdiction ...............17

V.      PROPOSED SCHEDULE .......................................................................................18

VI.     CONCLUSION.......................................................................................................19

860234_1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. Dairy Farmers of Am., Inc.*,
No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 48479
(D. Vt. May 4, 2011)............................................................................................................8

*Beckman v. KeyBank, N.A.*,
No. 12 Civ. 7836 (RLE), 2013 U.S. Dist. LEXIS 60894
(S.D.N.Y. Apr. 29, 2013)...............................................................................................11, 15

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).............................................................................................12, 15

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................................................7, 9, 13, 16

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)......................................................................................14

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987)...................................................................................15

*In re Alloy, Inc. Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
(S.D.N.Y. Dec. 2, 2004)..................................................................................................9, 13

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006)..................................................................................................9, 13

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................................9

*In re Currency Conversion Fee Antitrust Litig.*,
No. MDL 1409, 2006 U.S. Dist. LEXIS 81440
(S.D.N.Y. Nov. 8, 2006) ...................................................................................................7, 8

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510, 2007 U.S. Dist. LEXIS 29062
(E.D.N.Y. Apr. 19, 2007)..................................................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................12

**Page**

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ......................................................8

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) .....................................................10

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
   (S.D.N.Y. Feb. 1, 2007) ................................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................4, 7, 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................8

*In re Prudential Sec. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996), *aff'd sub nom.,Toland v.
   Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996) ...................16

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ 0962 (RCC), 2006 U.S. Dist. LEXIS 87825
   (S.D.N.Y. Dec. 4, 2006)................................................................17

*In re Wachovia Equity Sec. Litig.*,
   No. 08 Civ. 6171 (RJS), 2012 U.S. Dist. LEXIS 97910
   (S.D.N.Y. June 12, 2012).............................................................9, 10

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840
   (S.D.N.Y. Nov. 20, 2008) ...............................................................7

*Massiah v. Metroplus Health Plan, Inc.*,
   No. 11-cv-05669 (BMC), 2012 U.S. Dist. LEXIS 166383
   (E.D.N.Y. Nov. 16, 2012) ..............................................................16

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)...........................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................12

- iii -

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b).................................................................................................................2
    §78t(a).................................................................................................................2
    §78u-4(a)(7)........................................................................................................3

Federal Rules of Civil Procedure
    Rule 23...........................................................................................................3, 16
    Rule 30(b)(6)..................................................................................................2, 11

17 C.F.R.
    §240.10b-5...........................................................................................................2

**SECONDARY AUTHORITIES**

Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I. Miller & Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review:*
*Settlements Up; Attorneys' Fees Down* NERA Economic Consulting (Jan. 2013).......................15

*Manual for Complex Litigation*  (3d ed. 1995)
    §30.41...................................................................................................................8

Plaintiff and Class Representative Hawaii Annuity Trust for Operating Engineers ("Hawaii OE" or "Plaintiff") respectfully submits this memorandum in support of its unopposed motion for preliminary approval of the settlement reached in the above-captioned litigation (the "Settlement"). The proposed Settlement provides a recovery of $40,000,000.00 in cash to resolve this securities class action against sanofi-aventis SA ("Sanofi"), Gerard Le Fur, and Hanspeter Spek (collectively, "Defendants").  The Settlement is set forth in a Settlement Agreement entered into by all parties dated September 19, 2013 (the "Stipulation").[1]

The Settlement is the result of well-informed and extensive arm's-length negotiations between counsel, facilitated by a respected and experienced mediator, the Honorable Layn R. Phillips (Ret.).  By this motion, Plaintiff seeks an order 1) granting preliminary approval of the proposed Settlement; 2) approving the form and manner of giving notice of the proposed Settlement to the Class; and 3) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto ("Notice Order").  As shown below, the proposed Settlement is an excellent result for the Class under the circumstances, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants this Court's approval.

## I.       INTRODUCTION

This case arises out of Defendants' alleged misleading statements and omissions during the Class Period (February 24, 2006 through June 13, 2007) regarding the safety and approvability of the drug rimonabant, also known by its trade names Acomplia and Zimulti, for the treatment of obesity. The operative First Amended Complaint for Violation of Securities Laws ("First Amended

---

[1]      Unless otherwise defined, all capitalized terms have the meanings ascribed to them in the Stipulation.

Complaint" or "FAC") alleges Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, by withholding material information from investors during the Class Period about rimonabant's safety profile and not disclosing its association with serious side effects, and further failing to disclose that the U.S. Food and Drug Administration ("FDA") had grave concerns regarding these side effects which threatened rimonabant's then-pending application for market approval. The First Amended Complaint alleges that, as a result of Defendants' conduct, Sanofi American Depository Receipts ("ADRs") traded at artificially inflated prices during the Class Period, and Plaintiff and Members of the Class were damaged as a result.

The proposed Settlement is the culmination of nearly six years of vigorous litigation, which included extensive investigation into the claims of the Class; the filing of a detailed Consolidated Complaint; thoroughly-briefed oppositions to Defendants' motions to dismiss and briefing on related motions for reconsideration; a well-supported motion for class certification, which motion was successfully granted; class-certification discovery, including the depositions of the Lead Plaintiff and the Class Representative, Defendants' experts on falsity and materiality and five percipient witnesses; lengthy settlement negotiations with the assistance of Judge Phillips, a former federal district court judge and nationally-recognized mediator; depositions of current and former Sanofi employees, including those designated as Sanofi's corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6); depositions of relevant third parties; and the review and analysis of over 5.1 million pages of documents produced by Defendants and third-party fact witnesses and financial analysts. The proposed Settlement now before the Court for preliminary approval provides for a total recovery for the benefit of the Class of $40,000,000.00 in cash. If approved, the proposed Settlement will resolve all claims in the Litigation against the Defendants.

- 2 -

860234_1

The Settlement was reached only after months of arm's-length settlement negotiations with the assistance of Judge Phillips, at a point when the parties fully understood the strengths and weaknesses of their respective positions.  Plaintiff and its counsel believe that the proposed Settlement represents an exceptional result and is in the best interests of the Class, particularly when compared to the risks that protracted and contested litigation, including further discovery, dispositive motion practice, trial, and likely appeals, might result in a vastly smaller recovery, or no recovery at all, from Defendants.

At the Settlement Hearing, the Court will have before it more detailed motion papers in support of the proposed Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate.  But first, Plaintiff requests that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Specifically, Plaintiff requests that this Court enter the Order Preliminarily Approving Settlement and Providing for Notice (attached as Exhibit A to the Stipulation), which will, among other things:

1.  preliminarily approve the Settlement on the terms set forth in the Stipulation;

2.  approve the form and content of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing, Proof of Claim, and Summary Notice attached as Exhibits A-1, A-2 and A-3 to the Stipulation, respectively;

3.  find that the procedures established for distribution of the Notice and Proof of Claim and publication of the Summary Notice in the manner and form set forth in the Notice Order constitute the best notice practicable under the circumstances, and satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(7), the rules of the Court, and all other applicable law and rules; and

- 3 -

4.      set a schedule and procedures for: (a) disseminating the Notice and Proof of Claim and publication of the Summary Notice; (b) requesting exclusion from the Class; (c) objecting to the Settlement, the proposed Plan of Allocation and/or Class Counsel's application for attorneys' fees and expenses or the Representative Plaintiffs' application for expenses; (d) submitting papers in support of final approval of the Settlement; and (e) setting the Settlement Hearing.

Plaintiff requests the Court take the initial step in the approval process and grant preliminary approval of the proposed Settlement. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled."). Consideration of some important factors, as set forth below in §III.B, demonstrates that the proposed Settlement clearly falls "within the range of possible approval." *Id.*

## II.      PROCEDURAL HISTORY AND SUMMARY OF ALLEGATIONS

This is a securities-fraud class action on behalf of all investors in Sanofi ADRs during the period February 24, 2006 to June 13, 2007. Defendants are Sanofi, one of the world's largest pharmaceutical companies, and two of its Class Period officers, Gerard Le Fur and Hanspeter Spek.

On November 13, 2007, the City of Taylor General Employees Retirement System filed the initial complaint in this matter. By an order dated February 29, 2008, the Court appointed two funds to serve as "Lead Plaintiffs" pursuant to the requirements of the PSLRA, and appointed Robbins Geller Rudman & Dowd LLP (then known as Coughlin Stoia Geller Rudman & Robbins LLP) to serve as Lead Counsel. On April 29, 2008, Lead Plaintiffs filed a Consolidated Complaint for Violations of the Federal Securities Laws, which alleged that during the Class Period, Defendants issued misleading statements and omitted material facts regarding the safety and approvability of rimonabant for the treatment of obesity. Lead Plaintiffs also alleged that Defendants' omissions and

- 4 -

misrepresentations caused Sanofi's ADRs to trade at artificially inflated prices during the proposed Class Period and that Lead Plaintiffs and Members of the proposed Class were damaged as a result.

On September 25, 2009, the Court granted Defendants' motion to dismiss the Consolidated Complaint.  On October 9, 2009, Lead Plaintiffs filed a motion for reconsideration of the dismissal order.  On July 27, 2010, the Court granted the motion for reconsideration and granted Lead Plaintiffs' request for leave to file an amended complaint.  Lead Plaintiffs filed the First Amended Complaint on July 28, 2010.  On March 30, 2011, the Court denied Defendants' motion to dismiss the FAC.

The FAC alleges that prior to and during the Class Period, Sanofi positioned rimonabant as a potential "blockbuster" drug that could treat obesity with only mild side effects, if any.  As alleged in the FAC, the market for such a drug would be enormous, and rimonabant's market approval in the United States would have created an immediate and long-lasting revenue stream for Sanofi in the billions of dollars.  The FAC alleges that rimonabant's market approval in the United States was important for Sanofi and Sanofi investors, because many of the Company's best-selling drugs, including Ambien, Plavix and Lovenox, were scheduled to go off-patent within the next few years; rimonabant would replace these revenue streams.

The FAC alleges that, unbeknownst to investors, clinical trials of rimonabant showed a statistically significant increase in the incidence of suicidality among the drug's users.  The FAC alleges that this increase in suicidality was also identified by medical experts at the FDA who were tasked with reviewing Sanofi's application to market rimonabant.  Specifically, on February 17, 2006, Sanofi received an "approvable" letter from the FDA ("the Action Letter") on its application to market rimonabant as a treatment for obesity.  As alleged in the FAC, the Action Letter directed Sanofi to conduct a thorough review of the clinical trial data from ongoing and completed

- 5 -

rimonabant studies, in order to further assess the drug's association with suicidality. Sanofi responded to the FDA's request for further analysis on October 26, 2006 ("the Complete Response"). The FAC alleges that the Complete Response showed that rimonabant was associated with suicidality, increasing the FDA's alarm over the safety profile of the drug and further jeopardizing Sanofi's efforts to bring rimonabant to market. The FAC also alleges that Defendants failed to disclose all of these facts to the investing public.

The FAC further alleges that on June 13, 2007, the end of the Class Period, the FDA convened an Advisory Committee hearing on rimonabant. During the hearing, the FDA's medical reviewers presented their assessment of rimonabant's efficacy and safety, stating unequivocally that rimonabant was causally associated with suicidality. The FAC alleges that the Advisory Committee voted unanimously to reject the application to market the rimonabant, due to the panel's concerns over the drug's safety. The FAC alleges that, as a result of the disclosures surrounding the Advisory Committee hearing, the price of Sanofi's ADRs dropped $1.31 on June 13, 2007, from $44.38 to $43.07 per ADR.

On May 20, 2011, Defendants answered the FAC, denying all material allegations of the FAC and asserting their defenses.

On March 20, 2013, the Court entered an order certifying a Class defined as: "All purchasers of Sanofi American Depository Receipts ('ADRs') during the period February 24, 2006 through June 13, 2007, who were damaged as a result of defendants' violations of federal securities laws." The Court also appointed Hawaii OE as Class Representative and Robbins Geller Rudman & Dowd LLP as Class Counsel. Prior to and following the Court's Order on class certification, the Parties were involved in merits discovery, including the production of documents and witness depositions.

In an effort to resolve the action, the parties engaged the services of Judge Phillips (Ret.). The parties attended a full-day mediation session on May 28, 2013 with Judge Phillips, but did not reach resolution.  However, the parties continued discussions through, and with the assistance of, Judge Phillips.  On July 16, 2013 the parties agreed to Judge Phillips' proposal to settle the case, which Plaintiff now presents to the Court for preliminary approval.

## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

As discussed herein, the proposed Settlement is an excellent result for Plaintiff and the Class under the circumstances of this case.  While Plaintiff is confident in the merits of the case, the path to proving liability and damages was not without risk, and the proposed Settlement is certainly well within the range of what would be determined to be fair, reasonable, and adequate.  Plaintiff respectfully submits that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of this Settlement.  *See also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840, at *4 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed.") (citations omitted).

### A.   The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *NASDAQ*, 176 F.R.D. at 102 ("In considering

- 7 -

preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.").  "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'"  *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 48479, at *9 (D. Vt. May 4, 2011) (citation omitted).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted.  *See NASDAQ*, 176 F.R.D. at 102 (citing *Manual for Complex Litigation* §30.41 (3d ed. 1995)); *Currency Conversion*, 2006 U.S. Dist. LEXIS 81440, at *13; *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval . . . .'") (citation omitted).  "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval."  *NASDAQ*, 176 F.R.D. at 102.

"Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members."  *Allen*, U.S. Dist. LEXIS 48479, at *10.  "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . Settlement can voice those objections."  *Id.*  A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (finding a "presumption of correctness attache[d]" to a class-action settlement

- 8 -

where parties were represented by experienced counsel who conducted "substantial merits-related discovery" and mediated before a retired judge); *see also In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (same).

### B.    Preliminary Approval of the Settlement Should Be Granted

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted); *see also In re Wachovia Equity Sec. Litig.*, No. 08 Civ. 6171 (RJS), 2012 U.S. Dist. LEXIS 97910, at *9-*10 (S.D.N.Y. June 12, 2012).  For the following reasons, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

Courts have consistently recognized the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially where the settlement being evaluated is a securities class action.  *See, e.g.*, *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *5-*6 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious

- 9 -

complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This case is no exception.  Plaintiff advanced complex legal and factual issues under the federal securities laws, which require extensive expert discovery and testimony.  "'[A] vast amount of additional factual and expert discovery remains to prepare for trials, and motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable.'"  *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009) (citation omitted).  Indeed, briefing on dispositive motions was not scheduled to close until November 2014, with the interim period consisting of "costly and labor-extensive discovery," much of which would have taken place in France pursuant to complicated rules governing international discovery.  *Wachovia*, 2012 U.S. Dist. LEXIS 97910, at *10.  Trial would likely not have ensued for several more months.  Thus, even if successful, it could have been many years before Plaintiff – and the Class – could have recovered their damages.

### 2.     The Reaction of the Class to the Settlement

Plaintiff has diligently represented the interests of the Class and was actively involved in the decision to enter into the Settlement with Defendants.  In the event any objections are received after notice is disseminated, they will be addressed by Class Counsel in connection with the motion for final approval of the Settlement.

### 3.     The Stage of the Proceedings and the Amount of Discovery Completed

The volume and substance of Plaintiff's and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement.

This knowledge is based on an extensive investigation of this action, including, *inter alia*: (i) review of Sanofi's press releases, public statements, SEC filings, FDA and regulatory filings and

- 10 -

reports, and securities analysts' reports and advisories about the Company; (ii) review of financial and news media reports about the Company; and (iii) research of the applicable law with respect to the claims asserted in the action and the potential defenses thereto.  Additionally, since the Court denied Defendants' motion to dismiss in March 2011 – and continuing until this proposed Settlement was reached – the parties engaged in an extensive discovery process that included: (i) Plaintiff's review and analysis of over 5.1 million pages of documents produced by Defendants and third-party fact witnesses and financial analysts; (ii) the depositions of Plaintiff New England Carpenters Guaranteed Annuity Fund and three investment advisors for the funds; (iii) the depositions of Defendants' experts on materiality and falsity, Plaintiff's expert on the Depository Trust & Clearing Corporation ("DTCC"), DTCC representatives, and Dr. Kelly Posner, a third party who reviewed rimonabant adverse event data, in connection with class certification; (iv) the depositions of former and current Sanofi employees, including the deposition of corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6) and third party witnesses; and (v) preparation for an additional 15 fact depositions (including the deposition of each Individual Defendant) as well as the depositions of additional corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6) and additional third-party depositions.

The accumulation of the information from the above sources permitted Plaintiff and Class Counsel to be well-informed about the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants.  *See Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (RLE), 2013 U.S. Dist. LEXIS 60894, at *14 (S.D.N.Y. Apr. 29, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'") (citation omitted).  Therefore, this Court should find that this factor also supports the Settlement.

### 4.    The Settlement Was Negotiated at Arm's-Length and Is Supported by Plaintiff and Experienced Counsel

As set forth above, the Settlement was negotiated at arm's-length by counsel who are experienced in complex securities litigation and who were acting in an informed manner.  The Litigation was vigorously prosecuted against Defendants for nearly six years.  Class Counsel not only conducted an extensive pre-filing investigation, but also engaged in extensive formal discovery, including review and analysis of over 5.1 million pages of documents and preparing for and/or conducting more than 30 fact-based and expert depositions.  Accordingly, Class Counsel is particularly well-informed as to the operative facts and potential risks of continuing to pursue the Litigation compared to the immediate and certain benefits of resolving the Litigation on the terms reflected in the Stipulation.  Under these circumstances, a presumption of fairness attaches to the proposed Settlement.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting *Manual for Complex Litigation*, *supra*, at §30.42).

Moreover, the Settlement was negotiated under the direction and with the direct involvement of Plaintiff, who is a sophisticated institutional investor, as well as with the assistance of Judge Phillips, a retired federal district court judge and highly experienced mediator.  These facts further strengthen the Settlement's presumption of fairness.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

- 12 -

860234_1

## 5.    The Risk of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. As this case amply demonstrates, securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *5-*6 (finding that issues present in securities action presented significant hurdles to proving liability).

While Plaintiff believes that it would be successful and that the allegations of the First Amended Complaint would ultimately be borne out by the evidence, it also recognizes that it faced significant hurdles to proving liability. For example, Plaintiff would have confronted a number of challenges in establishing liability and damages at trial. As argued in their motion to dismiss, and at class certification, Defendants would have re-argued that liability was unwarranted because the information regarding the causal connection between rimonabant and suicidality, and the FDA's concern about that causal connection, was not material; Defendants would also have re-argued that whether material or not, the causal connection between suicidality and rimonabant was disclosed to the market during the Class Period. Additionally, at summary judgment and (potentially) trial, Defendants would have also contended that they made no false and/or misleading statements or omissions regarding rimonabant because they believed there was no causal connection between rimonabant and suicidality, and that they accurately described the FDA's concern over suicidality. Defendants would also contest scienter, claiming that the clinicians, safety officers, and regulatory specialists who worked on rimonabant clinical studies and/or application for market approval believed that rimonabant was a safe, effective treatment for obesity, that rimonabant's approvability

- 13 -

was not in question, and that Defendants believed the same.  Although Plaintiff was confident that it would have been able to support its claims with qualified and persuasive expert testimony, jury reactions to competing experts are inherently difficult to predict, and Defendants would have presented highly experienced experts to support their various defenses to liability.

Plaintiff also faced substantial risks in establishing loss causation and damages had the Litigation continued.  Defendants would have argued that any losses suffered by Class Members on their Sanofi ADRs were not attributable to the alleged public misstatements.  As with contested liability issues and as made clear during the class certification process, issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts."  Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total Settlement Amount – or even nothing at all.  Thus, the substantial payment of $40,000,000.00 by the Defendants, particularly when viewed in the context of the risks and the uncertainties involved in this Litigation, clearly weighs heavily in favor of approving the Settlement.

### 6.    The Risks of Maintaining the Class Action Through Trial

While a class was certified in this case, certification can be reviewed and modified at any time before trial.  Thus, there is always a risk that the action, or particular claims, might not be maintained as a class through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might not be certified is not illusory").  This factor weighs in favor of the Settlement.

7.      **Ability to Withstand a Greater Judgment**

While it is unclear whether Defendants are capable of withstanding a greater judgment, even if they are, that factor alone is insufficient to defeat approval of the Settlement.  *See D'Amato*, 236 F.3d at 86 (the ability to withstand higher judgment "standing alone, does not suggest that the settlement  is unfair"); *Beckman*, 2013 U.S. Dist. LEXIS 60894, at \*16-\*17 (finding "this factor is neutral and does not preclude the Court from approving the settlement").

8.      **The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

"The determination of whether a settlement amount is reasonable 'does not involve the use of a "mathematical equation yielding a particularized sum.""" *Beckman*, 2013 U.S. Dist. LEXIS 60894, at \*17 (citations omitted).  Nor is the settlement amount judged against "the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  A recent report by NERA reflects that, in 2012, the median securities-fraud settlement was $12 million.  Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I. Miller & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review: Settlements Up; Attorneys' Fees Down*, NERA Economic Consulting, at Figures 24 & 25 (Jan. 2013).  Thus, the amount of this proposed Settlement, more than three times that median amount, is well within the "range of reasonableness."

Moreover, a settlement, such as this one, which "'assures immediate payment of substantial amounts to class members, even if it means sacrificing "speculative payment of a hypothetically

- 15 -

larger amount years down the road,"'" is reasonable, and satisfies the eighth and ninth *Grinnell*

factors. *Massiah v. Metroplus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 U.S. Dist. LEXIS

166383, at *13 (E.D.N.Y. Nov. 16, 2012) (citations omitted).  This Settlement represents a very

good result under the circumstances.

## IV.    THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM AND RELEASE ARE APPROPRIATE AND SHOULD BE APPROVED

### A.    The Scope of the Notice Program Is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class

action settlement.  Rather, when measuring the adequacy of a settlement notice in a class action

under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness.

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist.

LEXIS 9450, at *26-*27 (S.D.N.Y. Feb. 1, 2007).  In fact, notice programs such as the one proposed

by Class Counsel have been approved as adequate under the Due Process Clause and Rule 23 in a

multitude of class action settlements.  *See, e.g.*, *In re Prudential Sec. Ltd. P'ships Litig.*, 164 F.R.D.

362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting mailing of notice to each

identifiable class member's last known address is "a procedure that has been given wide-spread

approval in other class actions"), *aff'd sub nom., Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3

(2d Cir. 1996).  Here, Plaintiff is consulting with counsel for Defendants and the experienced claims

administrator Gilardi & Co. LLC, thereby ensuring that every known avenue for obtaining the

identity of Class Members is being utilized to disseminate the Notice.  Therefore, it is reasonable to

conclude that the Notice will reach the vast majority of the Class Members.  Class Counsel

respectfully submits that the proposed notice program, as set forth in the Notice Order, is adequate

and should be approved by the Court.

- 16 -

860234_1

**B.     The Proposed Form of Notice Comports with the Requirements of Due Process, the PSLRA, and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved by Courts in This Jurisdiction**

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006).

The proposed Notice contains all of the information required by the PSLRA. *See* Notice, Exhibit A-1 to the Stipulation. The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to exclude themselves from the Settlement, or to object to any aspect of the Settlement. Furthermore, the Notice provides recipients with the contact information for Gilardi & Co. LLC and Class Counsel. The Plan of Allocation set forth in the Notice was prepared with the assistance of expert economists and reflects the alleged damages suffered by Class Members. The Plan of Allocation also provides that, following the first distribution of Settlement Funds, subsequent distributions will utilize a minimum distribution threshold of $10.00. Such a threshold provides for a more efficient and expedient distribution process. *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 U.S. Dist. LEXIS 29062, at *32 (E.D.N.Y. Apr. 19, 2007) ("*de minimis* thresholds for payable claims are beneficial to the class as a whole since they save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs"). Finally, the proposed format is the same or similar to formats that have been approved by many other courts in this jurisdiction, including this Court. Therefore, Plaintiff respectfully submits that the Court should approve the form of notice.

## V.    PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, the parties respectfully submit the following general schedule for the Court's review.

| Event | Time for Compliance |
|---|---|
| Deadline for Sanofi to provide transfer records to the Claims Administrator | 10 business days from the date of the Notice Order |
| Deadline for mailing the Notice and Proof of Claim form to Class Members | 14 days from the date of receipt of transfer records from Sanofi ("Notice Date") |
| Deadline for publishing the Summary Notice in *Investor's Business Daily* and on *Business Wire* | 10 days from the Notice Date |
| Deadline for filing Proof of Claim forms | 90 days from the Notice Date |
| Deadline for filing memoranda in support of approval of the Settlement and Plan of Allocation, or in support of Class Counsel's application for an award of attorneys' fees and expenses or Plaintiff's application for expenses | 30 days prior to the Settlement Hearing |
| Deadline for submitting exclusion requests or objections | 30 days prior to the Settlement Hearing |
| Deadline for filing of reply to any objections | 10 days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 90 days following execution of the Notice Order, at the Court's convenience |

- 18 -

## VI.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter the Notice Order

in connection with the settlement proceedings, which will provide (i) preliminary approval of the

Settlement; (ii) approval of the form and manner of giving notice of the Settlement to the Class; and

(iii) a hearing date and time to consider final approval of the Settlement and related matters.

DATED:  September 19, 2013                    Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              TOR GRONBORG
                                              ELLEN GUSIKOFF STEWART
                                              TRIG R. SMITH
                                              LAURIE L. LARGENT
                                              L. DANA MARTINDALE
                                              SUSANNAH R. CONN
                                              CAROLINE M. ROBERT


                                                      s/ Tor Gronborg
                                              _____
                                                    TOR GRONBORG

                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)
                                              torg@rgrdlaw.com
                                              elleng@rgrdlaw.com
                                              trigs@rgrdlaw.com
                                              llargent@rgrdlaw.com
                                              dmartindale@rgrdlaw.com
                                              sconn@rgrdlaw.com
                                              crobert@rgrdlaw.com

- 19 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Lead Counsel for Plaintiffs

- 20 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 19, 2013.

s/ TOR GRONBORG

TOR GRONBORG

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:torg@rgrdlaw.com

860234_1

# Mailing Information for a Case 1:07-cv-10279-GBD-FM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Susannah R Conn**
  sconn@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Lewis J. Liman**
  lliman@cgsh.com,maofiling@cgsh.com,mvogele@cgsh.com,sshapiro@cgsh.com

- **L. Dana Martindale**
  dmartindale@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,tmccormick@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Evan J. Smith**
  esmith@brodsky-smith.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,stremblay@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)