UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re SANOFI-AVENTIS SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS. | : Civil Action No. 1:07-CV-10279-GBD<br>:<br>: CLASS ACTION<br>:<br>: ECF CASE<br>: |

**OBJECTION OF JEFFREY M. BROWN TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**

I.  **INTRODUCTION**

JEFFREY M. BROWN, 750 South Dixie Highway, Boca Raton, FL 33432, 561-395-0000, objects to the Proposed Class Action Settlement and gives notice of intent to appear at the final approval hearing. Brown represents to the court he is a class member. Brown has confirmed his qualifying trades of the ADR's and will file a supplemental declaration with the qualifying details prior to the final approval hearing with confirmation from his broker.

    A. **Summary of the Action and the Settlement**

The settlement concerns a securities class action suit brought for a class of purchasers of Sanofi-Aventis American Depositary Receipts (the "ADRs").

Plaintiffs claim that Sanofi-Aventis ("Sanofi") misled investors during the Class Period by presenting a rosy picture of the company's prospects, including the gains the company would reap from the drug Rimonabant (a treatment for obesity) following its approval in the United States. [Doc 64, ¶ 5], Plaintiffs allege "Defendants positioned Rimonabant in the United States as the first "magic pill" that would help people shed pounds without serious side effects. Had

1

defendants' claims been true and the FDA approved the drug for the United States, Sanofi was set to reap an astronomical windfall." Plaintiffs further alleged that throughout the Class Period defendants failed to disclose to investors that clinical study data revealed that Rimonabant caused suicidal ideation and depression.  Eventually the FDA Advisory Committee of experts unanimously recommended the FDA deny Sanofi's application for approval of Rimonabant, and Sanofi withdrew its FDA application.  [Doc 64, ¶ 16-18]  Plaintiffs further alleged that Sanofi's shares dropped dramatically in price following disclosure of the safety issues associated with Rimonabant.  [Doc 20, ¶ 35]  Despite these allegations Class Counsel has agreed to a settlement of $40 million, or approximately $0.37 per ADR, a small percentage of the price drop alleged by Plaintiffs.

### B.  The Standard for Approving a Proposed Class Action Settlement

In reviewing a proposed settlement, the district court has a duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2)  Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions". . . . and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987).  "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.* 356 F.3d 781, 785 (7th Cir. 2004).

The court must be protective of unnamed class members.  "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.'" *Grant*, citing *In re Warner Communications Sec. Litig*., 798 F.2d 35, 37 (2d Cir.1986).   See also *Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent class members.")

Courts also may refuse to approve a settlement if insufficient notice is provided to class members to protect their due process rights.  Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all class members who would be bound by the proposal."  A court may refuse to approve a settlement "unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so."  Fed. R. Civ. Proc. 23(e)(4)  Case law has established that "Absent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is 'predominantly' for money damages."  *Hecht v. United Collection Bureau*, 691 F.3d 218, 222 (2d Cir. 2012), citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 & n.3 (1985).

## II.    ARGUMENT AND OBJECTIONS

### A.  Notice of the Proposed Settlement

Class Counsel has attempted to satisfy the notice requirements both through mailing of notice and through a settlement website, *available at:* http://www.gilardi.com/sanofi.  The documents provided on the website include  :  (1) Notice of Pendency of Class Action and Proposed Settlement, Motion For Attorneys' Fees and Settlement Fairness Hearing (the "Notice"),  (2) General Instructions for Proof of Claim, (3) Proof of Claim, (4) Settlement Agreement, (5) Preliminary Approval Order, and (6) PSLRA 90-Day Look-Back Daily Calculation.

Fed. R. Civ. Proc. 23(h) provides (1) A claim for an award must be made by motion . . . subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.  The Advisory Committee notes to the 2003 Amendments to Rule 23(h) further support this reading of the rule. They elaborate that "in setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, ¶68.

The information initially provided to Class Members as part of the Settlement, did not,

however, provide sufficient information to enable absent class members to make a determination as to the reasonableness of the settlement. Plaintiffs entered into a settlement agreement for absent class members on September 19, 2013, and the court issued its order preliminarily approving the Settlement on September 23, 2013. Class Counsel's Memoranda regarding the settlement, including its Memorandum Of Law In Support Of Motion For Final Approval Of Settlement And Plan Of Allocation Of Settlement Proceeds was not filed until December 10, 2013. Plaintiffs Memorandum Of Law In Support Of Motion For An Award Of Attorneys' Fees And Expenses And Award Of Expenses Pursuant To 15 U.S.C. §78u-4(a)(4) (Docket No. 265 and 267) (collectively the "Motion for Attorneys' Fees") was only filed on December 10, 2013 and was not posted on the Settlement Website, hence not easily available to absent class members. Notice was sent in early November but the motion for fees was filed just a few days prior to the December 16, 2013 deadline to either file their Objection to the Settlement or to exclude themselves from the Settlement depriving class members of a reasonable opportunity to review these documents. The information on the Settlement Website does not include such relevant information as copies of the original, consolidated or operative complaint (the First Amended Complaint). Taken together this lack of information reflects an effort to deliberately obscure the real fairness issues the proposed settlement raises.

### B. The Request for Attorneys' Fees is Unreasonable

#### 1. *Class Counsel's Fee Request ignores the PSLRA*

A PSLRA fee request under the Securities Act of 1934 must met the requirements of 15 U.S.C. §78u-4(a)(6): "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  "to determine a reasonable fee. . .it is necessary to understand what counsel has actually accomplished for their clients, the class members. This can only be done when the expenses paid by the class are deducted from the gross settlement." *Teachers' Ret. Sys.* V. A.C.L.N., Ltd. 2004 U.S. Dist LEXIS 8608 at *20-*21 (S.D.N.Y. 2009);

accord. *In re Initial Public Offering Securities Litig.*, 671 F. Supp. 2d 467, 514 (S.D.N.Y. 2009). Despite this Class Counsel seeks attorney's fees of 27.5% of the gross Settlement Fund, before deducting expenses incurred with the litigation. This is improper under the approach adopted in the Second Circuit.

### 2. *Class Counsel's Contingent Fee Request of 27.5% of the Settlement is Excessive*

The fee percentage requested by Class Counsel is out of line with attorney fee awards in the Second Circuit. Although Class Counsel cite several cases in which the fees awarded to class counsel were higher, they have only cherry picked favorable awards and have not provided comprehensive research on average fee awards. See Motion for Attorney's Fees, page 17. According to a widely quoted study by Brian Fitzpatrick published in the Journal of Empirical Legal Studies, the mean attorney fee award in the Second Circuit is 23.8%. Attorney fee percentage awards show an inverse relationship to the size of the award. For awards ranging from $30 million to $72.5 million, the mean percentage award is only 22.3%, much less than the fee percentage sought by Class Counsel . See Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7  J. Empirical L. Stud. 811 (2010).

The percentage award should reflect the benefits conferred on the class by Counsel's efforts. As the settlement amount is extremely low in comparison to the damages alleged by Plaintiffs, Class Counsel are not entitled to a high percentage fee award that would reward them for obtaining a less than satisfactory result for their clients.

### 3. *Class Counsel's Lodestar Calculation is Unreasonable and Based on Exaggerated Claims of Hourly Compensation for "Project Attorneys" and Paraprofessionals*

The lodestar is "based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006). In reviewing the hourly rates used in calculating the lodestar figure, "The court must determine "the rate a paying client would be willing to pay." "The lodestar figure should be based on market rates 'in line with those [rates] prevailing in the

5

community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *In Re Citigroup Inc. Securities Litigation,* 09 MD 2070 SHS, 2013 WL 3942951 (S.D.N.Y. Aug. 1, 2013), quoting *Reiter*, 457 F.3d at 232 and *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The Court must determine "the rate a paying client would be willing to pay." See *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); see generally *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 421-22 (2d Cir. 2010) (discussing use of *Arbor Hill* based lodestar calculation as part of cross check on common fund percentage award).

Class Counsel claims their attorneys and paraprofessionals devoted 13,267 hours to prosecution of the case since its inception. The percentage of work done by senior attorneys, versus that done by non-lawyers is not provided in Memorandum, and can only be obtained by reviewing the Declaration of Tor Gronberg, including its Exhibit A. Exhibit A reveals that the lodestar amount, based on attorney fee per hour calculations, is out of step with both the market and the compensation that a reasonable client would pay.

Partners were compensated between $835 and $585 per hour. Mr. Gronberg himself claims to have devoted 2,455.00 hours to the litigation at a rate of $735 per hour, for total billing of 1,804,425.00. Associate hourly rates range from $675 to $310 per hour, with the largest number of hours expended by Susannah Cohn, who purportedly devoted 1,422.60 hours to the action at a rate of $600 per hour. Project Attorney Nicola O'Donoghue, billed 1,181.15 hours at a rate of $440, for total billing of 519,706.00.

As discussed in *In re Citicorp*, "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with" prevailing market rates. *Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999) (citation omitted). After reviewing widely differing estimates of reasonable hourly compensation for contract attorneys, including Objector Frank's commonsense assertion that contract attorneys are typically only paid between $20 and $45 per hour, Judge Stein reduced the contract attorney rate from the proposed $550 per hour to $200. *In Re Citigroup Inc. Securities*

*Litigation,* 09 MD 2070 SHS, 2013 WL 3942951 (S.D.N.Y. Aug. 1, 2013).  The court should require additional information to substantiate the fees for junior attorneys and non-attorneys , as they appear to be unreasonable and well beyond prevailing market rates.   These excessive rates expose Class Counsel's lodestar multiplier of 1.5 as unreasonable because once the true lodestar is calculated, the true multiplier will be far over 1.5.

Class Counsel should not be compensated for time to pursue claims of investors not part of the Class.  The initial complaint included claims for a much larger group of investors in Sanofi securities than are in this class action litigation.  The initial complaint was filed for (a) all United States-based purchasers of Sanofi securities on the New York Stock Exchange ("NYSE"); (b) all United States-based purchasers of Sanofi securities on any foreign exchange; and (c) all foreign purchasers of Sanofi securities on the NYSE, during the period March 1, 2005 through June 13, 2007.  [Doc 1, Page 1]

During the litigation both the class of purchasers and the class period were narrowed considerably.  The initial class period stretched from March 1, 2005 through June 13, 2007 (or a period of two years and ten weeks), while the class period covered in the amended complaint and final settlement only included investors in Sanofi ADRs between Feb. 24, 2006 and June 13, 2007, or approximately one year and ten weeks.  The amended complaint also only covered claims of purchasers of Sanofi's ADRS, rather than purchasers of all Sanofi securities on the NYSE or foreign exchanges.  Although according to the plaintiffs Sanofi had 1.3 billion common shares outstanding from February 2006 to June 2007, the time of the alleged fraud, Plaintiffs estimates there were approximately 108 million Sanofi ADRs which may have been damaged during the Class Period. Plaintiff estimates that the average recovery under the Settlement is roughly $0.37 per damaged ADR before deduction of any taxes on the income, notice and administration costs and the attorneys' fee and expense award as determined by the Court. Although many of Class Counsel's clients were shut out of the litigation and cannot recover, they appear to have submitted all of the hours they expended in the instant litigation in their claim for attorney fees.

7

"Not every hour worked by every attorney who seeks to represent a class is due compensation from the class." *In Re Citigroup Inc. Securities Litigation,* 09 MD 2070 SHS, 2013 WL 3942951, at 28 (S.D.N.Y. Aug. 1, 2013)  Class counsel's legal work is "compensable only to the extent the attorney's work 'conferred substantial benefits on the class." Id, p. 29, citing *Victor v. Argent Classic Convertible Arbitrage Fund, L.P*., 623 F.3d 82, 87 (2d Cir. 2010). Although Class Counsel claim that "It took a great deal of skill to achieve a settlement at this level in this particular case" they have not addressed the large majority of their clients were shut out of the litigation.

The excessively large fee requested suggests Class Counsel is attempting to have the remaining class members pay the legal bills for the dismissed non-class member plaintiffs who cannot share in the recovery.  The hours billed in the litigation "must have actually benefited the class".  See *In re Elan Sec. Litig*., 385 F. Supp. 2d 363, 374 (S.D.N.Y 2005).  Rather than being entitled to praise for successfully litigating this complex litigation, Class Counsel should acknowledge that many of the parties they initially represented, and on whose behalf they no doubt expended much of their work in the early years of this litigation, were unsuccessful.

### C. The Gross Settlement is Insufficient and Fails to Adequately Compensate Class Members for Losses Caused by the Misleading Information and Material Omission in Statements Provided to Investors

Despite the seriousness of misstatements and omissions alleged Class Counsel has proposed, and the court has preliminarily accepted, a settlement amount of only $0.37 per ADR. This amounts to approximately 20.4% of the price decline alleged .  The allegations that Sanofi executives intentionally misrepresented the safety of Rimonabant and hid their knowledge that the drug caused suicidal ideation and depression are serious.  To be reasonable, the settlement should reflect the seriousness of the misrepresentations.  As the fourth largest pharmaceutical company in the world, the settlement appears merely a slap on the hand.

The Settlement fails to hold Sanofi executives liable for their misstatements for the company.  Public policy considerations suggest that the individuals responsible for the misstatements should be held accountable for those misstatements.

### III.   Joinder in Other Objections

All other good-faith objections are joined, adopted and incorporated by reference as if they appeared in full.

### IV.   Conclusions

For the foregoing reasons and all others to be at oral argument, Brown requests the court sustain his objections and grant the following relief:

- Order class counsel to submit a revised fee application.
- Continue the hearing to enable class members sufficient opportunity to review the Attorney's Fee Motion.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated:   December 16, 2013                    By: /s/ Forrest S. Turkish_____

Forrest S. Turkish (FT1197)
Law Office of Forrest S. Turkish
595 Broadway Bayonne, NJ 07002
Phone: (201) 339-8866
Fax: (201) 339-8456
Email: fsturkish@aol.com

### CERTIFICATE OF SERVICE

I certify that on December 16, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Southern District of New York by using the USDC CM/ECF system and registered CM/ECF users will be served by the CM/ECF system.

/s/ Forrest S. Turkish_____