UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re SANOFI-AVENTIS SECURITIES LITIGATION | : | Civil Action No. 1:07-cv-10279-GBD |
|  | : | <u>CLASS ACTION</u> |
| This Document Relates To: | : | **ECF CASE** |
| ALL ACTIONS. | : |  |

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD OF EXPENSES PURSUANT TO 15 U.S.C. §78u-4(a)(4)

902831_1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. THE REQUESTED FEE IS FAIR, REASONABLE AND SUPPORTED BY THE *GOLDBERGER* FACTORS, THE CLASS AND HAWAII OE ................................1

III. THE BROWN OBJECTION PROVIDES NO BASIS FOR REDUCING THE ATTORNEYS' FEES ...............................................................................................3

    A. The Brown Objection Should Be Rejected for Lack of Standing............................3

    B. The Notice Satisfies Rule 23, the PSLRA and Due Process...................................4

    C. Brown's Objections to the Requested Attorneys' Fees Are Baseless......................5

        1. Attorneys' Fees Are Properly Calculated as a Percentage of the Gross Settlement Fund .................................................................................5

        2. The 27.5% Fee Requested by Class Counsel and Supported by the Class Representative Is Neither Excessive Nor Out of Line .......................6

        3. Class Counsel's Lodestar Is Accurate and the Lodestar Multiple Is Low ..................................................................................................................7

IV. PAYMENTS OF CLASS COUNSEL'S AND PLAINTIFFS' EXPENSES IS REASONABLE AND UNOPPOSED............................................................................10

V. CONCLUSION................................................................................................................10

Plaintiff and Class Representative Hawaii Annuity Trust for Operating Engineers ("Hawaii OE" or "Plaintiff") respectfully submits this memorandum in further support of the Motion for an Award of Attorneys' Fees and Expenses and Award of Expenses Pursuant to 15 U.S.C. §78u-4(a)(4) (Dkt. No. 267).[1]

## I. INTRODUCTION

In accordance with the Court's September 20, 2013 Order, notice of the Settlement has been mailed to 423,286 Class Members, posted on the Internet, and a summary notice was published in *Investor's Business Daily* and over the *Business Wire*. The Notice advised that Class Counsel would seek attorneys' fees not to exceed 27.5% of the Settlement Fund and expenses not to exceed $900,000, and that the Plaintiffs would seek up to $45,000 in expenses. Dkt. No. 263.

The response from the Class has been overwhelmingly positive. Not a single Class Member objected to the expenses sought by Class Counsel or Plaintiffs. Not a single institutional investor objected to the requested attorneys' fees or opted out of the Settlement. Indeed, of the 423,286 Notices sent to Class Members, the lone objection was filed by serial objector Forrest S. Turkish on behalf of Jeffrey M. Brown. Mr. Brown, however, failed to timely establish he is a Member of the Class or has standing to object, and his objections to the award of attorneys' fees are unfounded and have been repeatedly rejected. Accordingly, approval of the Settlement, the expenses sought by Class Counsel and Plaintiffs and the award of attorneys' fees is warranted.

## II. THE REQUESTED FEE IS FAIR, REASONABLE AND SUPPORTED BY THE *GOLDBERGER* FACTORS, THE CLASS AND HAWAII OE

When awarding fees in common funds cases, the Second Circuit has recognized that the percentage-of-the-fund method "'directly aligns the interests of the class and its counsel and

---

[1]   Unless otherwise noted, all capitalized terms used herein are defined in the September 19, 2013 Settlement Agreement. Dkt. No. 262.

- 1 -

provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (citation omitted).  Earlier this year, in rejecting an objection to a 33-1/3% fee in a securities class action, the Second Circuit confirmed that "***the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class***."  *Hayes v. Harmony Gold Mining Co.*, 509 Fed. App'x 21, 24 (2d Cir.), *cert. denied*, ___ U.S. ___, 134 S. Ct. 310 (2013) (emphasis added).

Having accepted that the percentage-of-the-fund is the preferred means of awarding attorneys' fees, the Second Circuit, in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), set forth six factors for district courts to consider in determining the appropriate fee to award counsel.[2]  As detailed in Class Counsel's opening memorandum, each of the *Goldberger* factors strongly supports a 27.5% fee award.  *See* Dkt. No. 267 at 8-16.  Not a single Class Member has said otherwise (not even Mr. Brown, who failed to consider the *Goldberger* factors).  Indeed, the response of the Class is seminal evidence of the reasonableness of both the Settlement and the fee request.  *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *32 (S.D.N.Y. Nov. 7 2007).  Buttressing the overwhelmingly positive response of the Class is the Class Representative, Hawaii OE's, determination that the requested fee is reasonable and should be awarded.  *See* Declaration of Ryan Ilacqua, ¶5 (Dkt. No. 270).  Hawaii OE is a sophisticated institutional investor that was integrally involved in the litigation, and deference should be given to its informed consideration and support of the 27.5% fee award.  *In re Schering-Plough Corp.*, No. 08-397 (DMC) (JAD), 2013 U.S. Dist. LEXIS 147981, at *65 (D.N.J. Aug. 28, 2013).

---

[2] The *Goldberger* factors are: (1) the time and laborer expended by counsel); (2) the risks of the litigation; (3) the magnitude and complexity of the litigation; (4) the requested fee in relation to the settlement; (5) the quality of representation; and (6) public policy considerations.

### III. THE BROWN OBJECTION PROVIDES NO BASIS FOR REDUCING THE ATTORNEYS' FEES

#### A. The Brown Objection Should Be Rejected for Lack of Standing

Rule 23(e)(5) provides that "[a]ny *class member* may object" to a proposed settlement." Fed. R. Civ. P. 23(e)(5) (emphasis added). *See also In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 459 (S.D.N.Y. 2013) (it is "uncontested that [objector who is not a class member] does not have standing under Rule 23 to object to the Settlement"). Accordingly, the Notice ordered by the Court requires that, to be valid, an objection must "*identify the date(s), price(s), number(s) of shares of Sanofi ADRs you purchased and sold during the Class Period* . . . postmarked *no later than December 16, 2013*." *See* Notice at 6 (emphasis added).

Mr. Brown failed to timely provide any of the required evidence of Class membership. Rather, the objection only states: "Brown has confirmed his qualifying trades of the ADR's and will file a supplemental declaration with the qualifying details prior to the final approval hearing with confirmation from his broker." Dkt. No. 273 at 1. That is insufficient. The Notice specifically required that any objection set forth the Sanofi ADR purchase and sale information necessary to determine Class membership and to do it by no later than December 16, 2013. The Court's September 20, 2013 Order could not have been more clear: "*Any Member of the Class who does not make his, her, or its objection in the manner provided shall be deemed to have waived such objection* and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed settlement . . . or to the award of attorneys' fees . . . ." Dkt. No. 263, ¶10 (emphasis added).[3]

---

[3] There should be no concern that Mr. Brown did not understand the Court's requirements. Mr. Brown is a named partner at the Boca Raton, Florida litigation firm Lavalle, Brown & Ronan P.A., and his attorney, Mr. Turkish, is a serial objector who has filed objections to settlements in at least eight class actions in just the last 12 months. *See* accompanying Declaration of Susannah R.

- 3 -

There is ample precedent that bare assertions of class membership, like Mr. Brown's here, do not establish standing. *See*, *e.g.*, *Feder v. Elec. Data Sys. Corp.*, 248 Fed. App'x 579, 581 (5th Cir. 2007) ("[a]llowing someone to object to settlement in a class action based on this sort of weak, unsubstantiated evidence would inject a great deal of unjustified uncertainty into the settlement process"); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2011 U.S. Dist. LEXIS 103698, at *8-*9 (S.D.N.Y. Aug. 25, 2011) (finding unsigned, unsworn, unauthenticated tax form to be insufficient to establish class membership). Because Mr. Brown has not timely established his standing as a Member of the Class, his objection should be rejected.

### B. The Notice Satisfies Rule 23, the PSLRA and Due Process

Even if the Court were to consider the Brown objection, none of his arguments are valid. The objection begins by repeating one of Mr. Turkish's routinely rejected arguments: that notice was somehow deficient because the briefs in support of final approval of the Settlement and all of the complaints in the action were not posted on the Settlement website. Dkt. No. 273 at 3-4. The objection fails to cite a single rule, case or other authority requiring, or even suggesting, that final approval briefs or complaints be posted to a settlement website. To the contrary, notice here comports with Rule 23 and is entirely consistent with notice in similar cases in this Circuit and throughout the country. Indeed, Mr. Brown's objection was explicitly rejected by the Second Circuit in *Carlson v. Xerox Corp.*, 355 Fed. App'x 523, 525 (2d Cir. 2009) (notice that stated counsel would be moving for a fee award and provided the address of the court and all counsel "was reasonably directed to class members as required by Rule 23").

---

Conn in Support of Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, an Award of Attorneys' Fees and Expenses, and Award of Expenses Pursuant to 15 U.S.C. §78u-4(a)(4) ("Conn Decl."), ¶¶5-6.

Mr. Brown's claim that Class Counsel did not post the final approval briefs or complaints on the Internet "to deliberately obscure the real fairness issues the proposed settlement raises" (Dkt. No. 273 at 4) is illogical and borders on sanctionable, if it does not cross the line. The pleadings referenced by Mr. Brown were openly filed in this case. They are publicly available at the Courthouse and through PACER. The Notice itself specifically provided that the pleadings "may be inspected at the Office of the Clerk of the United States District Court for the Southern District of New York" and "all papers filed in this Action are available at www.pacer.gov." Notice at 6-7. Any Class Member could also have called Class Counsel and requested a copy of the pleadings, and the Notice specifically provided a toll-free number to call counsel "[f]or further information regarding the Action." *Id.* at 2. Even a simple Internet search for "Sanofi securities litigation complaint" identifies that all of the complaints in the case are available for free at the Stanford Law School Securities Class Action Clearinghouse. *See* http://securities.stanford.edu/1038/SNY_01/. Mr. Brown's own objection demonstrates that he had no difficulty obtaining copies of the complaints and final approval briefing, and his scurrilous attacks on Class Counsel should not be countenanced.

### C. Brown's Objections to the Requested Attorneys' Fees Are Baseless

Ignoring the *Goldberger* factors, the response of the Class and the informed decision of the Class Representative, the Brown objection tosses about a litany of unfounded and unsupported accusations that are largely cut-and-pasted from Mr. Turkish's repeated and rejected objections.

#### 1. Attorneys' Fees Are Properly Calculated as a Percentage of the Gross Settlement Fund

While Mr. Brown argues that attorneys' fees can only be calculated after expenses have been deducted (Dkt. No. 273 at 4-5), the law is clear that fees in securities class actions should be calculated as a percentage of the total settlement fund, and that expenses are reimbursed separately. "Indeed, courts throughout this Circuit regularly award fees of 25% to 30% or more of the ***total***

- 5 -

*recovery* under the percentage-of-the-recovery method." *Reynolds v. Repsol YPF, S.A.*, No. 1:06-cv-00733-DAB, 2008 U.S. Dist. LEXIS 106541, at *3 (S.D.N.Y. May 7, 2008) (emphasis added). *See, e.g.*, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming district court's award of "30% of the settlement fund"); *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *66-*67 (S.D.N.Y. Nov. 8, 2010) ("Courts in this District and throughout the nation . . . have not hesitated to award 30% of the **"*gross" recovery***, or more, in complicated securities fraud cases such as this.") (emphasis added). This Court is in accord, consistently awarding fees as a percentage of the total settlement amount. *See* Conn Decl., ¶7 & Exs. C-F.

Courts have repeatedly rejected objections identical to the one asserted here, and held that any assertion that fees must be calculated "net" of expenses is without merit. *See, e.g.*, *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 411 (D. Conn.), *aff'd*, 355 Fed. App'x 523 (2d Cir. 2009) (rejecting objection contending that "attorneys' fees should be paid out of the 'net fund' (*i.e.*, after payment of expenses) as opposed to the 'gross fund'" as "lack[ing] merit"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 172 n.8 (3d Cir. 2006) (rejecting objection that attorneys' fees must be calculated based on net settlement amount and noting "[e]xpenses are generally considered and reimbursed separately from attorneys' fees"). Likewise, the attorneys' fees here should be calculated as a percentage of the total Settlement Fund.

### 2. The 27.5% Fee Requested by Class Counsel and Supported by the Class Representative Is Neither Excessive Nor Out of Line

Citing to a single academic study, Mr. Brown argues that the requested fee of 27.5% is "excessive" and "out of line with attorney fee awards in the Second Circuit." Dkt. No. 273 at 5. He is wrong. As set forth in the opening brief, courts in this district and this Circuit routinely award fees at and above 27.5% in cases like this. *See* Dkt. No. 267 at 16-18. The Second Circuit itself, earlier

- 6 -

this year, upheld a fee award of 33-1/3% in *Harmony Gold Mining*, 509 Fed. App'x at 24. Even the article Mr. Brown purports to rely upon, Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 Journal Empirical Legal Studies 811, 833 (2010), states that "[m]ost fee awards were between 25 percent and 35 percent" and that the median fee award for securities cases, including extremely large cases and those with substantial objections, was 25%.[4] Conn Decl. Ex. G at 833-34. More recent studies, such as the NERA 2011 Year-End Review, which studied settlements from January 1996 to June 2011, found that the median fee award for cases settling between $25 and $99.9 million was 27%, and for cases settling between $10 and $24.9 million, the median fee awarded counsel was 30%. *See* Dr. Jordan Milev, et al., *Recent Trends in Securities Class Action Litigation: 2011 Year-End Review*, at 22 (NERA Dec. 14, 2011), attached as Ex. B to the Conn Decl. *See also* Conn Decl., Ex. H, Dr. Jordan Milev, et al., *Recent Trends in Securities Class Action Litigation: 2011 Mid-Year Review* at 27 (NERA July 26, 2011) (median attorneys' fees in securities class actions settling between $25 and $100 million was 27.3%).

Ultimately, Mr. Brown's claim that the requested 27.5% fee is "excessive" lacks context. He has not considered the *Goldberger* factors, the positive response of actual Class Members, the support of the Class Representative or the significant number of cases in this Circuit awarding fees at and above that requested by Class Counsel here. When considered in the proper context, Class Counsel's requested fee is both reasonable and consistent with Second Circuit precedent.

### 3. Class Counsel's Lodestar Is Accurate and the Lodestar Multiple Is Low

In lieu of considering the strong support for the requested 27.5% fee, Mr. Brown claims that the lodestar provided by Class Counsel is "Unreasonable and Based on Exaggerated Claims of

---

[4] The utility of the Fitzpatrick article is also limited because the study only analyzed cases from a two year period, 2006 and 2007. *See* Conn Decl., Ex. G at 812.

- 7 -

902831_1

Hourly Compensation." Dkt. No. 273 at 5-8. Once again, Mr. Brown makes baseless accusations against counsel who have vigorously prosecuted this case since day one.

As an initial matter, Mr. Brown's fixation with the lodestar submission is unwarranted. While lodestar data can certainly be considered, the Second Circuit has noted that, "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 122. That is consistent with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the" settlement. 15 U.S.C. §78u-4(a)(6) (emphasis added).[5]

Turning to the lodestar data, Mr. Brown claims that the hourly rates used by Class Counsel are "out of step with both the market and the compensation that a reasonable client would pay." Dkt. No. 273 at 6. However, with the exception of what Mr. Brown calls "contract attorneys," the objection fails to identify any of Class Counsel's hourly rates that are inconsistent with standard rates charged in the market. As Mr. Brown states, partners were billed between $585 and $835 per hour. *Id*. A January 2010 study of bankruptcy billing rates by American Lawyer reported that partner rates at Cleary Gottlieb, Defendants' counsel here, ranged from $725 to $980 per hour with a median rate of $960 per hour. Conn Decl., Ex. I at 1. In other words, the hourly rates used by Class Counsel here are ***below*** market rate (even assuming there has been no inflation in rates over the past four years). Class Counsel's associate rates – $310 to $675 per hour – are also lower than those used by Cleary Gottlieb in 2009 – $235 to $910 per hour. *Id*.[6]

---

[5] While making unfounded claims that Class Counsel's lodestar is exaggerated, Mr. Brown ignores the fact that the 1.5 multiplier here is less than half the 3.6 average and 3.1 median lodestar multiplier for securities class action fees the Second Circuit found reasonable in *Xerox*, 355 Fed. App'x at 526.

[6] The American Lawyer report also demonstrates that Cleary Gottlieb's partner and associate rates are in-line with the New York City market for large firms, with median partner rates for the 17

- 8 -

902831_1

Citing Judge Stein's opinion in *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2013 U.S. Dist. LEXIS 108115 (S.D.N.Y. Aug. 1, 2013), Mr. Brown argues that "contract attorney" rates should not exceed $200 per hour. Dkt. No. 273 at 6-7. What Mr. Brown does not appear to understand is that ***none*** of Class Counsel's lodestar is from hours billed by contract attorneys. While the contract attorneys discussed in *Citigroup* were largely hourly employees working through temp agencies, the five project attorneys included in Class Counsel's lodestar here were all full-time salaried attorneys of Robbins Geller Rudman & Dowd LLP working in Class Counsel's offices. Moreover, Judge Stein reduced the contract attorney rate in *Citigroup* because the vast majority of the contract attorney hours were incurred ***after*** a settlement had been negotiated. By contrast, here not a single hour of project attorney time was spent on the case after the parties agreed to the general terms of the Settlement in July 2013. *Citigroup*, 2013 U.S. Dist. LEXIS 108115, at *59-*64. Indeed, as set forth in Exhibit A to Dkt. No. 269, the project attorney billing in this case comprises only 11% of the total lodestar and is neither exaggerated nor unreasonable.[7]

Mr. Brown's argument that Class Counsel "should not be compensated for time to pursue claims of investors not part of the Class" is illogical and unsupported. Class Counsel are being compensated for what they achieved, recovering $40,000,000 for Class Members. It is the dedication throughout this litigation, and time and expenses incurred by Class Counsel that led to

---

firms identified ranging from $825 to $980 per hour and median associate rates ranging from $420 to $598 per hour. Conn Decl., Ex. I at 1-2. The average of Class Counsel's rates here, $662 for partners and $456 for associates, is at or below the low-end of reported rates in 2009. Data recently collected and compiled by the *National Law Journal* also confirms that, in this market, billing rates for partners range from $640 to $1055 per hour and associate billing rates range from $340 to $615 per hour, well above the rates used by Class Counsel. Conn Decl., Ex. J.

[7] A review of recent bankruptcy filings also demonstrates that the rates used by Class Counsel for the project attorneys, $345 to $440 per hour, are consistent with the market rate for commensurate "staff attorneys" at New York City defense firms. *See* Conn Decl., Exs. K-N (identifying staff attorney rates between $275 and $490 per hour).

that result.  There is no authority, and Mr. Brown cites none, for reducing Class Counsel's lodestar simply because the scope of the proposed class changed during the litigation.  Indeed, Mr. Brown appears to be under the misimpression that there were aspects of Class Counsel's efforts which benefitted *only* those investors who were ultimately not certified as part of the Class.  To the contrary, as the Court is aware, the work of Class Counsel, from initial investigation through deposition discovery, has been focused on establishing the elements of a violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934.  Regardless of the class period and the securities at issue, the work needed to plead and prove the allegations of fraud here was the same.  And, it was this work that led to a settlement that not a single Class Member has opposed.

### IV.  PAYMENTS OF CLASS COUNSEL'S AND PLAINTIFFS' EXPENSES IS REASONABLE AND UNOPPOSED

As set forth in the opening memorandum, Class Counsel incurred expenses of $769,662.25 and Class Representative Hawaii OE and Lead Plaintiff New England Carpenters incurred costs of $28,687.50 and $16,300, respectively.  *See* Dkt. No. 267 at 21-24.  These amounts are below those identified in the Notice, and not a single Class Member has objected to them.  Accordingly, payment of the expenses incurred by Class Counsel and for the time Plaintiffs expended is appropriate.

### V.  CONCLUSION

Based on the foregoing and the overwhelming support of Class Members, it is respectfully requested that the Court approve Class Counsel's request for attorneys' fees of 27.5% of the Settlement Fund plus expenses in the amount of $769,662.25, and approve the award of expenses to Hawaii OE and New England Carpenters in the amount of $28,687.50 and $16,300, respectively.

DATED:  December 30, 2013                    Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP

                         s/ Tor Gronborg
                         TOR GRONBORG

TOR GRONBORG
ELLEN GUSIKOFF STEWART
TRIG R. SMITH
LAURIE L. LARGENT
L. DANA MARTINDALE
SUSANNAH R. CONN
CAROLINE M. ROBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
trigs@rgrdlaw.com
llargent@rgrdlaw.com
dmartindale@rgrdlaw.com
sconn@rgrdlaw.com
crobert@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Lead Counsel for Plaintiffs

- 11 -

902831_1

CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 30, 2013.

s/ Tor Gronborg
TOR GRONBORG

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  torg@rgrdlaw.com

902831_1

# Mailing Information for a Case 1:07-cv-10279-GBD-FM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Susannah R Conn**
  sconn@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Laurie L. Largent**
  llargent@rgrdlaw.com

- **Lewis J. Liman**
  lliman@cgsh.com,maofiling@cgsh.com,mvogele@cgsh.com,sshapiro@cgsh.com

- **L. Dana Martindale**
  dmartindale@rgrdlaw.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Evan J. Smith**
  esmith@brodsky-smith.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,stremblay@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

- **Forrest Scott Turkish**
  fsturkish@aol.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)